J-udge Underwood
delivered the opinion of the Court.
Chief Justice Robertson did not sit.
On the 31st of October, 1824, McCurdy and others conveyed to J. Harvie, for the use of th©President, Directors and Company of the Bank of‘ Kentucky, a house and lot in Frankfort.
The consideration expressed upon the face of the deed is $4,248. McCurdy mortgaged the same pro* perty in 1819, to Hickman and others, to indemnify them against loss in consequence of their being-sureties for him. One of the debts mentioned in the1 mortgage was due to the Bank of Kentucky, and for Hiis debt, amounting to $1,700, Hickman was on©’ of the sureties. All the mortgagees united in the execution of the deed to Harvie. McCurdy, Hickman, and Taylor were jointly bound, as sureties for Pearson, to the Bank of Kentucky for the payment of $2,780. The Directors of the Bank accepted1 the deed for the house and lot as a full discharge of the balance of the debt due by McCurdy, and, in satisfaction of $2,254 92 of Pearson’s debt. The* property was not worth $4,248. According to the evidence, about half that sum would have been a lair cash price for it, at the time the Rank received it.
in 1827, McCurdy filed his hill, alleging that Pearson was insolvent, that Taylor had paid him a tlii rd, and that Hickman had failed to pay the third of the amount settled with the Bank for Pearson. Wherefore, he asked a decree against Hickman for his third, and for general relief. By an amendment t o the bill, Pearson was made a party. But no dec ree was asked against him in express terms.
The circuit court decreed that Hickman and P eárson should each pay McCurdy $1,061, and that Hickman should pay the costs of suit.' To reverse these decrees, this writ of error is prosecuted.
Parol testimony not adimssible to cord'"orto*" show upon ^r°°d^a íd. — there-cord itself showing the quistionp i ■ blt fi(U»,ilci m.,n 0„miU> trial of, p-rol "¿"'sl-i'w'die extent ofMie ;'!q’my before tllu ■,Tir' *
*556 Hickman relies on a judgment rendered in a suit at law, as a bar to any deciee against him in this suit. The validity of this defence is the first question.
It appears that McCurdy sued Hickman, in assumpsit, with a view to recover the proportion of tiie Pearson debt, for .which he was liable. The declaration contains a single count, in which the drawing of the note by Pearson, payahle to Hickman, Taylor,' and McCurdy jointly, their endorsement of it to Hunter, its discount by the Bank of Kentucky, its non-payment at maturity, the recovery of judgment thereon, by the Bank, against drawer and endorsers, and the payment of the judgment by McCurdy in property of the value $4000, are all distinctly and at large averred. Pearson’s insolvency is likewise averred.- Upon the facts thus stated,the declaration, as a deduction of law, alleges the assumpsit, on the part of Hickman, to be a “ promise to pay $2,000, being the amount of his proportion of the value of the properly aforesaid, by whit it the judgment aforesaid was satisfied.” The breach is then assigned in the non-payment of the money. HÍc’hman demurred to the declaration, and the court tiiC^eupon gave judgment in bar of the action. It is the judgméíd thus rendered, which Hickman has pleaded in bar of the relief sought by the present suit. Several depositions have been taken, proving that the reason given by the court for deciding in .Hickman’s favor, upon the demurrer, was that McCurdy had remedy exclusively in chancery. Exceptions were filed to the reading of these depositions for urant of notice, and because they were taken in term time.
Without enquiring into the propriety of the exceptions, we are of opinion that the depositions should have been rejected. The effect and opera-Con of a record cannot be controled by proving that the reasons of the judge for entering the jndgmer,t were erroneous. Where the form of the count is general, as the common counts in assumpsit, testimony may he introduced, to show what matters Were embraced by the trial, and what were exclud' *557 ed, and thus application of the judgment rendered is made to operate as a bar to future litigation arising upon the matters settled. But where a record upon its face, as here, shows what matters were put in issue, the judgment of the court cannot lie controled by proving that the judge gave erroneous reasons, and was influenced by them in deciding the cause. If such a doctrine were established, it would go a great length in destroying the verity and efficacy of records. It matters not whether the reasons of the judge be right or wrong, so far as the efficacy of the judgment rendered is concerned. If the judgment be correct, the erroneous reasons on which it was based will not vitiate it. If the judgment be wrong, the constitution and laws have provided this tribunal to reverse it. The creation of this court by the constitution, and the regulation of appeals and writs of error by law, proceed upon the ground that the judgments of inferior tribunals, however erroneous, must stand and be enforced until regularly reversed. If the errors he apparent on the face of the record, unless it be of such a character as to render the proceeding void, it does not vitiate the judgment, much less can it be destroyed by proving iiow badly the judge reasoned.
tion of sumo ro»Ucrin proceedings,
Under the opinion of a majority of the members of this court in the case of Hunt vs. Terrell’s heirs, not yet reported, the judgment upon the demurrer must bar this suit, if the declaration be good. The case of Ford’s executors vs. Wilson’s administrators, II Bibb, 538, cited in argument, isnot decisive of the question under consideration. There the court refused to permit the defendant to make any defence at law, entertaining the opinion that the matters of defence contained in the pleas were only cognisable in chancery. But here a full trial at law was had upon the matter contained in the declaration. If the pleas offered by Wilson’s administrators had been filed instead of being rejected, and the court had given judgment upon demurrer against the pleas, the cases would then have been analogous. If the pleas had been filed and the matters set forth in them had been sufficient to bar the action, and the pleas had been adjudged bad upon demurrer, wc appre *558 bend that a resort to the chancellor could not bo jastitied, because the judge thought the matters contain^ ed in the pleas exhibited a defence exclusively cognizable in u court of equity.
Surety paj;« pipn/in !pn - jjorty. The law does not ¡lart'of principa! that he Wl!! W se~ ],ie of ¡ho property; thr HHi^cann”* eiceer^the10^ amount of the debt.
The merit of Hickman’s defence, so far as it dc-pends upon the judgment in the action at law, turne upon the sufficiency of McCurdy’s declaration. We think it is fatally defective, and that the demurrer was properly sustained. The law raises no such as-sumpsit as that set lorth. il the value ol the property paid in discharge of Pearson’s debt, exceed the amount of tiie debt, then it would follow thattiie surety matting payment in property, would have a right to recover of his co-sureties or of Pearson, a Sreatei' s!,m ^iaii ^lat which he owed, provided the assumpsit raised bylaw be to pay the value of the property, instead of the amount of the debt. The extent of liability cannot exceed the amount of the debt. Upon no pretext can it be said that a surety has paid for his principal and co-sureties more than was owing by them. The law cannot estimate the sacrifices, the trouble and expense which he incurs in raising the money with which to pay the debt. If property is sold under execution at half or a fourth of its value, the surety can only ask indemnity for the price or money brought by the sale. So likewise if he voluntarily pay double the debt in property, when fairly valued, his recourse must be limited to the amount of the debt. He cannot be regarded as expending more than that for his principal and co-sureties, because they did not owe more. Tiie declaration in the suit at law avOrs the property paid to be of greater value than the amount of the debt for which McCurdy was bound as surety, and the attempt is to recover from Hickman, the co-snrety, ids portion of the value of the property. Thus the declaration attempts to impose a responsibility beyond the measure which the law allows. Consequently no such assumpsit arose upon the facts averred as that set forth, and hence the judgment on the demurrer was correct. The declaration being defective according to the case of Kendal vs. Tal bo f &c. I Marsh. 322, the judgment upon the demurrer constitutes no bar to another action for the same canse.
Liability of fgr"contrilmtion originM* c<l in equity ¡ law antl of
When suretyth^crei dito* for all his Splits as he^oan"?'158^ er tbc whole" amount due Pnncil,al ¡^enee to° «dint he pays, Ifno.sa.nh hó'carfreaoy-ernomora thanarcim* l3urS0Ecnt"
There can be no doubt as to the jurisdiction of the chancellor in affording McCurdv appropriate ■relief. Indeed, the liability of co-sureties for con tribntion. originally grew out of a rule of equity •which at length ripened into a principle of law, so that at this day courts of law and chancery entertain concurrent jurisdiction-in giving remedv to the suretv, paying the debt. See I Maddox. 233, and Lansdales administrators &c. vs. Cox, VII Monroe, 403.
The next question for adjudication relates to the amount which McCurdv has a right to recover. And here it may be asked, whether his recourse against Pearson, the principal, is to he regulated by the same rules which must govern as betwern co-sureties. According tQ the civil law a surety, at the time .he paid the debt, had a right to stipulate with the creditor fora cession of his actions, and in that case the surety was subrogated to all the rights and ■actions of the creditor, and might prosecute them against the debtor with the same effect that the ereditor could have done. This rule would allow the surety to recover of the principal debtor the full amount of the debt, without regard to the sum which the surety mav have paid in discharge of it. Where the surety neglected to acquire this subrogation, he was still allowed to proseoute an action in his own right against the principal debtor, in order to be reimbuvsed what be had paid. This doctrine may be found in Potbier on obligations,’chap. 6, section 7, article I. Wherever the surety stipulates with the creditor for all his rights against the principal debt- or, we see no reason why he should not he fully substituted in the place of the creditor so as to recover the whole amount without, regard to what the surety pays. The principal debtor cannot object that he is-charged with the whole amount of his obligation, because he has received value to that extent, and it cannot matter whether he pays it to the creditor or to the surety, to whom the creditor may-have transferred it by express stipulation. But where the creditor receives from the surety less than the foil amount of the debt in discharge of the whole, and makes no contract to put the surety in his place, then all that the, surety can ask, is an indemnity for' *560 what lie pays; for in this case the creditor may have been induced to abate in his demand through favor to the principal debtor. In this record there is no evidence that McCurdy stipulated with the bank that lie should stand in their place in respect to the collection of the whole debt from Pearson. The testimony rather proves that no contract on that subject was entered into. \S e are, therefore, of opinion that McCurdy cannot lay a foundation on which to recover against Pearson beyond what lie lias paid, or in other words, an indemnity for his loss.
Rule between co-securiúes must be equality in b(a1iiiit the burden resulting fr«m the in' solvency of principal.
If surety pay debt of principal, in money, ho is entitled to sum
Tiie rule as between co-sureties must, under all circumstances, be that of ecpiality in bearing the burden cast on any one of them by the insolvency of their principal. Sureties cannot be required to pay the whole debt to that one who discharges the whole by the payment of a less sum, under the idea of substitution, because if there he three sureties, A, B, and C, and A pays the creditor with half, if he recovers the whole of B, he has the right to the substitution and can then go back on A for his full proportion, and thus it amounts at last to a division of the loss among them. As, then, McCurdy made rib contract with the bank whereby he became entitled to the rights of the bank, in enforcing the payment of the whole debt from Pearson, bis right to recover from Hickman and Pearson stands upon the same foundation.
We deem it unnecessary now to decide whether our statute giving a remedy', by motion, in favor of the surety' discharging the debt, changes the measure of responsibility and the amount which maybe recovered from the principal debtor and his co-sureties. Be that as it may, McCurdy has not pursued his statutory remedy. He has applied to the chancellor and must be redressed according to the principles by which the chancellor’s conscience is and ought to be governed.
According to the view already taken, McCurdy lias a right to claim an indemnity for his loss and no more. The question is, how much has he lost? His counsel contend that he sold his property' to the *561 bank at a fixed price, and that Hickman and Pearson have no right to go into the inquiry whether the price allowed was more or less than the value of the property. If the price allowed be regarded as so much money paid to McCurdy, and then returned by him to the bank in discharge of his own and Pearson’s debt, we should be compelled to say that his loss was equal to $2,254 92, with interest thereon from the date of the cashier’s receipt. If instead of selling the property to the bank, McCurdy bad sold it to an' individual for $4,248 in money, and he liad paid it over in discharge of his own and Pearson’s debts, there could have been no doubt of Pearson’s liability to him for the whole $2,254 92 with interest, and of Hickman’s liability for a full share of it, to-wit, a third. But we conceive, there is a material difference between the actual conversion of a house and lot by sale into money, with which debts are paid, and the conveyance of the house and lot directly to the obligee or to another for him in discharge of debts. Where the money is actually received and paid out, the familiar doctrine of money expended for the use of another, applies in subsequent controversies between surety and principal or between co-sureties. But property may be, and often is conveyed in discharge of a debt, because the creditor can get nothing else, and therefore accepts what is offered. Creditors often consider the dents due them as worth only half or a fourth of their nominal amount. In settling and compromising such debts, it makes no difference, whether the debt be rated at its nominal amount, and the price of the property accepted in payment he doubled or quadrupled, or whether the debt and property both be reduced to their true value or fair market price. It is clear from the proof, that McCurdy’s property conveyed to Harvie for the use of the bank, was worth not much more than half what the bank allowed. It is equally clear, that it was owing to the doubtful and laboring circumstances of the debtors, that tiie property was received in discharge of debts at the price of $4,248. A sale of property for money at its fair value, did not enter into the contemplation of the parties. When the bank allowed *562 $4,248 in doubtful debts for the property, the arrangement did not make the property of that value .in money. McCurdy’s loss did not exceed the money value or fair cash price of his property, and to that must his recovery be restricted.
paid ami in-1”0 uonly cntitled to value t,f property ThesameCoriUnion, as to recoveryirom co'sccuntX-
Acknowlodgwent of con-deed^ioeF-11 toppel. Trae consideration eTby5 woT" 1 ’
Remote responsibility upon warraaaffeot°the0t contribution of co-socuriT^ulatetTb 1S actual loss,
Hickman is a party to the deed which conveys tqie property to Ilarvie for the use of the bank, and deed states that the conveyance was made “in consideration of the sum of $4,248 in hand paid, &c.” The deed concludes with a warranty of title ^Y McCurdy alone. If it can be viewed in the light of an estoppel upon Hickman, because he as a party to the deetl has acknowledged the payment of $4,248 for the property, he cannot now be permitted to question that it was worth that sum; for if that amount in money was actually paid as the acknowledgment purports, Hickman should account for his portion of the money applied to Pearson’s debt. It was decided in the case of Gilly vs. Grubbs, 1 J. J. Marshall, 389, that the acknowledgment in the deed of the payment of the consideration, was only prima facie evidence of payment, and that it might be contradicted by parol testimony. We are satisfied with the doctrine of that case, and it results that Hickman is not estopped to prove that $4,248 were not actually paid. This he has done, by showing that the bank paid doubtful debts instead of money. The amount of McCurdy’s loss must, therefore, be ascertained by proof of the fair money value of the property, and not by what it was rated at in the compromise.
R was contended in argument, that McCurdy’s res-possibility on the warranty contained in his deed, should induce us to regard the value of the properly as Pr operly fixed at $4,248, because in the event of its loss by a paramount claim, lie would be compelí* ed, upon the warranty, to answer for that sum. Were R cel't;un that McCurdy would be compelled to pay that amount upon the warranty, we should hold Hickman and Pearson responsible for it. In such an event McCurdy’s loss would equal that sum, and under the principles laid down, his recovery should be measured by it. But there is no intitna•tion in the record, that the title to the property is in *563 danger. If it be safe, McCurdy’s responsibility on the warranty is nothing. If it be unsafe, it was his duty to show it, and the grounds upon which he required an indemnity on that account. In the absence of- allegation or intimation to the contrary, we must presume the title indisputable.
ascerta;n the liability °f co-securiTaluc pauUllmilil ho apportionamon8't,le ooníiiw to^* their aovara! anwant»..
Another question yet remains. What portion of the value of the house and lot shall Hickman and Pearson pay? Does equity require that the amount of McCurdy’s own debt (so to speak) shall be deducted from the value, to be ascertained as required by this opinion, and then, that Hickman and Pearson each be decreed to pavone third of the balance, 0r shall the value of the house and lot, to be ascertained as herein directed, be apportioned between MeCurdy’s own debt and Pearson’s debt, according to their amounts, and Hickman and Pearson each be required to pay one third of that ■ portion applied towards the extinguishment of Pearson’s debt? We think that the value of the house and lot should be apportioned between the two debts according to their amounts, and that Hickman and Pearson should each pay one third of the portion applied to the ex-tinguishment of Pearson’s debt. In legal estimation, McCurdy was equally bound to pay both debts. His property was received in payment of both, but it passed at a higher price than its true value. In the arrangement made, the property paid the balance of McCurdy’s debt and $2,254 92 on Pearson.’s debt. Therefore, as the aggregate of the balance of Mc-Curdy’s debt and the said $2,254 92 is, to the true value of th'e house and lot at the time the payment was made, so will be the said $2,254 92 to the portion- of the value applied to the extinguishment of Pearson’s debt. This rule will work tire case, and show what portion of the value of McCurdy’s property lias been applied to the payment of the debt for which he and riickman were bound in conjunction with' Taylor, as sureties. One third of this portion, with interest from the time it was paid up to the date of the decree, is the measure of Hickman’s liability. It was erroneous to charge Hickman with the costs expended in suing Pearson.
Petition for a re-hearing. a
Monroe and Brown, for plaintiffs; Crittenden ami Morehcad, for defendant.
We have thought it best, to save trouble upon the return of the cause, to fix the value of the house and lot. Under all the circumstances, we are disposed to allow as high a price as’the evidence will warrant. Iiarvie says, in the consultations had on the subject, the opinion prevailed that the property was worth $3000; Brown says the bank held the property at $2500, and he thinks it was sold too low to Page at $2000; the other evidence fixes on $2000 as a fair price, and one witness brings it down to $1400 or $1500. We shall take $2250 as the true value, being a medium between the highest and lowest value spoken of, and the circuit court in entering their decree must take that as the true value.
The decree of the circuit court is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.